# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**PATRICIA REMENTER,**

           **Plaintiff,**

**-vs-**                                      **Case No.  6:04-cv-1148-Orl-22JGG**

**METROPOLITAN LIFE INSURANCE**
**COMPANY,**

           **Defendant.**

_____

# ORDER

## I. INTRODUCTION

This cause comes before the Court for consideration of the Magistrate Judge's Report and Recommendation (Doc. 48) in this ERISA disability benefits denial case.  The Magistrate Judge recommends that Metropolitan Life Insurance Company ("MetLife") be granted a final judgment on Plaintiff Patricia Rementer's claim.  Although the Court concurs in many of the Magistrate Judge's conclusions, it respectfully declines to adopt the ultimate recommendation of entry of final judgment in MetLife's favor.

## II.  SUMMARY JUDGMENT IN ERISA CASES

At the outset, the Court reiterates what it has stated in recent cases of this type:

> In an ERISA benefit denial case [subject to deferential review], . . . in a very real sense, the district court sits more as an appellate tribunal than as a trial court.  It does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary."  *Leahy v. Raytheon Co.*, 315 F.3d 11, 17-18 (1st Cir.

2002)[1] (quoted with approval in *Curran v. Kemper Nat. Servs., Inc.*, No. 04-14097, 2005 WL 894840 *7 (11th Cir. Mar. 16, 2005) (unpublished *per curiam* opinion)).   Accordingly, "[w]here the decision to grant or deny benefits is reviewed for abuse of discretion, a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).[2]

*Fish v. Unum Life Ins. Co. of Am.*, No. 6:04-cv-1716-Orl-22JGG, 2005 WL 3186089 * 13

(M.D. Fla. November 29, 2005) (order granting defendant's motion for summary judgment and

denying plaintiff's cross-motion) (some footnotes omitted); *Bruce v. Metropolitan Life Ins. Co.*,

No. 6:04-cv-482-Orl-22JGG (M.D. Fla. Sept. 28, 2005) (order denying summary judgment and

remanding matter to claims administrator for further consideration).   Judges Whittemore,

Presnell and Kovachevich of this Court have reached the same conclusion in orders addressing

summary judgment motions.   *See Providence v. Hartford Life & Acc. Ins. Co.*, 357 F. Supp. 2d

1341, 1342 n.1 (M.D. Fla. 2005) (citing *Bendixen*) (Whittemore, J.); *Smorto v. 3DI Techs., Inc.*,

393 F. Supp. 2d 1304, 1313 (M.D. Fla. 2005) (citing *Providence* and *Bendixen*) (Presnell, J.);

*Stenner-Muzyka v. Unum Life Ins. Co. of Am.*, No. 8:04-cv-984-T-17TBM, 2005 WL 1610708

*3 (M. D. Fla. Jul. 7, 2005) (citing *Providence* and *Bendixen*) (Kovachevich, J.).

---

[1]Although the First Circuit did not qualify the foregoing quote, this Court interprets the appellate court's statements as applying to those cases where a plan administrator has been granted discretion, rather than to those subject to *de novo* review.

[2]What this means to the First Circuit is that "the district court must ask whether the aggregate evidence, viewed in the light most favorable to the non-moving party, could support a rational determination that the plan administrator acted arbitrarily in denying the claim for benefits." *Leahy*, 315 F.3d at 18.

The Court recognizes, as it has in the past, that the Eleventh Circuit's unpublished *Curran* opinion represents merely persuasive authority, rather than binding precedent. *See* 11th Cir. R. 36-2 and I.O.P. 6.  It is also true that there are Eleventh Circuit decisions, including published opinions, which apply the normal summary judgment rules to ERISA benefit denial cases.  *See, e.g., Slomcenski v. Citibank, N.A.,* - F.3d - , 2005 WL 3423156 *5 (11th Cir. Dec. 14, 2005) (applying ordinary summary judgment procedures to ERISA benefits claim).  The Magistrate Judge aptly noted the existence of such authority.  However, *Curran* is the only Eleventh Circuit decision of which this Court is aware that confronts this issue in the fashion addressed in *Leahy* and *Bendixen*.[3]

In a case like this, where the ultimate issue to be determined is whether there is a reasonable basis for a claims administrator's benefits decision, it is difficult to ascertain how the "normal" summary judgment rules can sensibly apply.  After all, the ultimate question is not whether the claimant is truly disabled, but whether there is a reasonable basis in the record to support the administrator's decision on that point.  In other words, conflicting evidence on the question of disability cannot alone create an issue of fact precluding summary judgment, since an administrator's decision that rejects certain evidence and credits conflicting proof may nevertheless be reasonable.  More fundamentally, perhaps, if the "normal" summary judgment rules apply to these kinds of cases, and it is determined that an issue of material fact exists,

---

[3]However, *Curran* is not completely free from ambiguity.  After implying that "the factual review standard applicable to summary-judgment review" is supplanted by the "the deferential review owed to the administrator in an ERISA case," 2005 WL 894840 *7, the appellate court ultimately concluded that Curran "failed to show genuine issues of material facts to preclude summary judgment under the proper review standard," *id.* at *9.

thereby precluding summary judgment, what is the next step in the case resolution process?  In other kinds of cases, the next step would be a trial.  But what is this Court to "try" when it ordinarily cannot consider evidence outside the administrative record,[4] and the  ultimate issue to be determined is whether there is a reasonable basis in that record for the fiduciary's decision?  These considerations lead this Court to believe that unless it receives contrary guidance from the Eleventh Circuit, the proper method of evaluating these cases is as expressed in *Curran, Leahy* and *Bendixen*.

## III. ANALYSIS

Turning to the merits, the Court agrees with the Magistrate Judge's articulation of the six-step analysis set forth in *Williams v. BellSouth Telecomms., Inc.,* 373 F.3d 1132, 1138 (11th Cir. 2004), his conclusion that the arbitrary and capricious standard of review applies, and his initial determination that MetLife's benefit denial decision was *de novo* wrong.  However, this Court parts company with the Magistrate Judge's conclusion that MetLife's decision must be upheld.

As the Magistrate Judge noted, the November 2003 Transferable Skills Analysis ("TSA"), which MetLife cited in denying Rementer's claim, omitted functional limitations identified by Rementer's treating physician and relied instead on the conclusions of MetLife's paid "independent" medical consultant.  However, this circumstance alone would not render

---

[4]The Court recognizes that even under abuse of discretion review, there may be some instances when evidence beyond the administrative record (e.g., evidence relevant to a plan administrator's conflict of interest) may be relevant.  *See Cerrito v. Liberty Life Assurance Co. of Boston*, 209 F.R.D. 663, 664 (M.D. Fla. 2002) (in the context of a discovery ruling, identifying purposes for which matters outside the administrative record might be relevant).

MetLife's decision unreasonable.   What was patently unreasonable is that in denying

Rementer's claim, MetLife purported to rely on the opinion of another hired medical consultant,

Dr. Ito, yet ignored Dr. Ito's specifically-identified limitation of no "prolonged sitting (ie needs

to change position)."  Rementer AR 175.  In fact, MetLife's June 29, 2004 final denial letter

mentioned every single restriction identified by Dr. Ito except the one concerning sitting.  This

omission is telling.  MetLife essentially accepted all of Dr. Ito's findings except the one that

was the most damaging to MetLife's position.  While it is possible MetLife could have totally

rejected Dr. Ito's opinions and still rendered a reasonable decision, it was arbitrary and

capricious for the insurer to "cherry-pick" among the limitations specifically identified by Dr.

Ito.

Since MetLife chose to rely on Dr. Ito's findings in rejecting Rementer's claim, it was

also arbitrary and capricious for the insurer to utilize the "old" vocational assessment without

taking into account the additional limitations identified by Dr. Ito, particularly regarding

prolonged sitting.  The November 2003 TSA assumed that Rementer could engage in purely

sedentary work "where lifting and carrying was limited to not more than 10 pounds."  Rementer

AR 120.  Moreover, the assessment contained the following definition of "sedentary work":

> Exerting up to 10 pounds of force occasionally and/or a
> negligible amount of force frequently to lift, carry, push, pull or
> otherwise move objects, including the human body.  *Sedentary*
> *work involves sitting most of the time but may involve walking or*
> *standing for brief periods of time.*  Jobs are sedentary if walking
> and standing are required only occasionally and all other
> sedentary criteria are met.

*Id.*  (emphasis added).

However, in June 2004, Dr. Ito identified restrictions more significant than assumed in the earlier TSA.  After discussing Rementer's daily activities, Dr. Ito stated:  "While this level of activity would support [the] ability to participate in [the] full range of sedentary activities, the objective medical would support pain could be a limiting factor for consistency in terms of these activities, intolerance to physical therapy and medications."  Rementer AR 175.  Dr. Ito then identified the following specific restrictions:

> Restrictions in terms of lifting greater than 10 lb on a rare occasion, repetitive push-pull, walking on uneven surfaces, climbing, stooping and crawling, bending only [on] an occasional basis, overhead work and work requiring rapid or quick neck rotation, extension, or bending, and prolonged sitting (ie needs to change position) are supported with the documentation of her cervical and lumbar spondylitic changes and left lower extremity radiculopathy.  The limiting issue appears to be pain which is supported by the current objective medical on file, but certainly is subjective in nature in terms of severity.

*Id.*

The old TSA did not take into account the restriction of no prolonged sitting and the limitations pain imposed on Rementer's ability to work.  These deficiencies rendered the old vocational assessment essentially worthless.  Since MetLife chose to rely on Dr. Ito's report in its denial letter, it was arbitrary and capricious for the insurer to base its denial on a vocational assessment that did not take into account the restrictions identified by Dr. Ito.   As the Magistrate Judge noted, because "MetLife never re-presented these restrictions to a vocational expert," "[n]o vocational expert ever opined that a person with such additional limitations actually could work full time at the four alternate sedentary occupations that exist locally."

Doc. 48 at 27.[5]  Accordingly, there was no basis in the record for MetLife to conclude that Rementer could actually perform the jobs MetLife identified as existing in the local economy. This rendered MetLife's determination of non-disability arbitrary and capricious.

## IV.  CONCLUSION

Based on the foregoing, it is ORDERED as follows:

1.  The Court declines to adopt the December 9, 2005 Report and Recommendation (Doc. 48) insofar as it recommends entry of final judgment in favor of Defendant Metropolitan Life Insurance Company.

2.  Defendant Metropolitan Life Insurance Company's Motion for Summary Judgment (Doc. 30), filed August 1, 2005, is DENIED.

3.  Plaintiff Patricia Rementer's Motion for Summary Judgment (Doc. 29), filed August 1, 2005, is GRANTED.

4.  The parties shall confer in an attempt to agree on a proposed form of final judgment. On or before January 30, 2006, the parties shall either file an agreed form of judgment or submit

---

[5]The Court also agrees with the Magistrate Judge's other criticisms of MetLife's denial letter:

> MetLife's final decision fails to make clear findings as to Rementer's actual residual functional capacity, limitations, and restrictions; fails to articulate its reason for inferring that Rementer can do sedentary work full time; relies on a weak methodology for its "Labor Market Analysis;" and fails to obtain a new vocational expert opinion that considers Dr. Ito's added restrictions."

Doc. 48 at 28-29.

separate versions.  Any agreement by the Defendant concerning a form of judgment shall not operate as a waiver of the Defendant's right to appeal this Order.

    5.  Any other pending motions are moot.

    **DONE** and **ORDERED** in Chambers, in Orlando, Florida on January 10, 2006.


                                                        ANNE C. CONWAY
                                                        United States District Judge






Copies furnished to:

Counsel of Record
Unrepresented Party
Magistrate Judge